INHABITANTS OF HOLDEN *versus* INHABITANTS OF BREWER.

Where an Act, for the division of a town and incorporation of a new one, authorized the Commissioners of the County to appoint a committee to determine the value of certain property named, and any other property of the town not provided for, with power to settle any differences regarding the town property, and also " to determine all privileges and burdens, that justice may be done between said towns;" it was *held,* that the committee had no power to decide respecting the support or settlement of paupers.

By c. 32, § 46 of R. S., towns are required to relieve and support persons who are in need, residing therein, and having no settlement in this State.

When *such persons* remove into another town and fall into distress, no further obligation is imposed upon the town who first furnished the necessary relief.

And when a town is divided by an Act of the Legislature, a pauper residing therein, without any settlement in this State, must be supported by that town in which his residence may be established at the time of the division.

ON FACTS AGREED.

ASSUMPSIT, for supplies furnished to Rhoda White, a pauper.

Of the notice and answer no question is raised.

The pauper was born in Massachusetts in 1798, and came to her father's in 1831. He moved into Brewer from Massachusetts, in 1829, and has ever since resided there. The pauper has ever since lived with her father, in that part of Brewer now composing the town of Holden.

In the year of 1834, she became idiotic or insane, and so remains. She became a pauper in August of 1834, and has ever since been supported by the town of Brewer, at her father's house.

The town of Brewer was divided in April, 1852, and the easterly part thereof incorporated into a new town by the name of Holden.

In the Act of incorporation was a provision for the appointment of a committee by the Commissioners of Penobscot county, to hear and determine upon the matters therein enumerated, which related to the property of the town of Brewer, " said committee having full power to settle any differences regarding the town property in Brewer, which shall belong in proper proportion to the town of Holden, the amount of money to be paid, and the time when it shall be paid, *and also determine all privileges and burdens, that justice may be done between said towns.*"

That committee heard and determined the matters submitted to them, and in relation to the paupers belonging to the old town of Brewer determined " that the said new town of Holden shall assume all such as acquired an absolute settlement on the territory now within the incorporated boundaries of said Holden, excepting Rhoda White, whom, together with all other paupers for the support of whom said old town of Brewer were legally liable, the said new town of Brewer are to assume."

The inhabitants of Brewer, contended, that the committee had no such power and refused to support the pauper.

If, under this statement of facts, the support of said pauper legally devolves upon the town of Holden, the plaintiffs are to become nonsuit, otherwise a default is to be entered.

*A. W. Paine,* for plaintiffs.

That the support of the pauper was a " burden" imposed upon the town, as much so as the payment of money for any other purposes, is indisputable. The *literal* interpretation of the Act unquestionably gives to the committee the power which they have exercised.

Why should not this be held the *legal* interpretation of the Act? The only reason for the negative, that has been given, is, that the case of paupers' settlement, in division of towns, is provided for in the general pauper law, and it was not the intention of the Legislature to change the general law by this special Act.

Holden *v.* Brewer.

To this view of the case, which in fact is the only question of the case, it is answered —

1. That *if the case is provided for by the general law*, yet there is nothing to prevent the operation of a special law on the same subject changing the operation of the general law.

The insertion of a special provision for the support of paupers, in case of division of towns is very common and indeed most usual, yet the Court have never hesitated to give full effect to such special provision, however much it may be in derogation or opposition to the general enactment. *Norton* v. *Mansfield*, 16 Mass. 48; *Bloomfield* v. *Skowhegan*, 16 Maine, 58; *Belgrade* v. *Dearborn*, 21 Maine, 334; *Winthrop* v. *Auburn*, 31 Maine, 465.

2. The case is not provided for in the general law. It is claimed to be embraced in the provisions of c. 32 of the R. S., § 1, clause "fourth." It is very clear, however, that the provisions of the enactment do not embrace this case.

Here the pauper never "*had a legal settlement*" in Brewer; nor was she "absent at the time of the division," therefore she does not come within the first paragraph. *Mt. Desert* v. *Swanville*, 20 Maine, 343.

Neither does she come within the description of paupers provided for in the last paragraph, inasmuch as she never was "*legally settled*" in Brewer, nor had she "begun to acquire a settlement therein" inasmuch as she had been a pauper ever since the time of her first falling in want up to the time of the new incorporation. 20 Maine, 341. And besides, the provision in such case is not, that such person shall have a settlement in the new town, but only "the same rights in the new town, in relation to settlement, whether incipient or absolute, as he would otherwise have had in the old town where he dwelt."

The case then falls clearly without the provisions of the section and cannot be affected by them. For no person, under those provisions, could gain a settlement in the new town, unless he *then had a settlement* in the old town. *New*

*Portland* v. *Rumford*, 13 Maine, 299; *New Portland* v. *New Vineyard*, 16 Maine, 69; *Sutton* v. *Dana*, 4 Pick. 117.

This case not being provided for in the general law, affords a strong argument in favor of the position assumed as to the authority of the committee.

3. But if we are in error in this assumption, what is the effect? The pauper follows the general law.

But by the general law, where a new town is incorporated from an old town, as is the case here, the old town retains all the property and effects and is chargeable with the debts and burdens belonging to it. No part of these pass to the new town, except so far as they are made to do so by the Act of incorporation. *Windham* v. *Portland*, 4 Mass. 384–9.

The only exceptions are those falling within the " fourth" clause already cited, and the burden of the support of the pauper is upon Brewer. *Smithfield* v. *Belgrade*, 19 Maine, 390.

*Peters*, for defendants.

The committee were unauthorized to throw upon Brewer the support of the pauper, who belonged to the town of Holden. The laws as to the support of paupers existed, and they had no authority to change them.

The " burdens" in the Act of incorporation, do not imply any future liability, but only liabilities and indebtedness already existing. They referred to the town debts and contracts then existing.

If the committee had any authority on the subject of future support of paupers, it certainly extended to any contingency under that head; and they could have gone on and decided that Brewer shall support all persons now having residence in the territory of the two towns, whoever of them shall ever become a pauper. If burdens could cover what was not in existence, the committee could have gone on legislating *ad infinitum.*

If the pauper has no settlement, she belonged to neither town, and Holden must take her territory with all its inci-

dents, its fields, its woods, minerals, and whatever else they find upon it; and finding this Rhoda upon her lands, what will they do with her? They say she has no settlement with them. But they cannot call on Brewer, because neither has she a settlement with us. It is their misfortune, and they must take care of her. R. S., c. 32, § 46.

SHEPLEY, C. J. — The pauper does not appear to have had any legal settlement in this State. She had been supported by the town of Brewer since 1834, not because she had a legal settlement therein, but in obedience to the provisions of statutes. Act of March 21, 1821, § 18; R. S., c. 32, § 46. She might have been removed from the State to the place where she had a legal settlement. If her father had removed from the town of Brewer, to any other town in this State, and taken her with him as a member of his family, the town of Brewer would have been relieved from any obligation to provide for her support. When she ceased to be in that town, by a division of it, all obligation on its part to support her terminated. There remained upon it no burden on account of her former residence. The town of Holden finding her within its limits, became liable to provide for her while she should remain in that town and need relief. It can have no right to call upon Brewer to pay for her support, unless by virtue of a decision of the committee appointed under the Act passed to divide the town of Brewer.

That committee was authorized by the Act to determine the value of certain property named, and of any other property of the town of Brewer, not provided for in the Act; and they had "full power to settle any differences regarding the town property in Brewer;" "and also determine all privileges and burdens, that justice may be done between said towns."

Such general language finds its interpretation and limitation by reference to the subject matter contained in the Act. If a matter so important as the support of the poor was to be submitted to a determination by the committee in prefer-

ence to leaving it to be regulated by the existing laws, it is reasonable to expect that it would have been enumerated as one of the subjects to be determined by them, especially as subjects of less importance were named.

There were subjects named in the Act, out of which burdens and privileges might be expected to arise, and for which it might be necessary to make provision; and the language appears to have been well suited for that purpose. The fifth section of the Act provides, that " the inhabitants of said town shall continue to hold and enjoy in common, all the rights and privileges belonging to the inhabitants of Brewer, in any and all public landings, cemeteries, gravel pits, flats and fisheries of every kind." Some or all of these must be cared for, preserved, regulated, and fenced, and out of them would arise burdens and privileges, from which differences and difficulties might be justly anticipated, unless the burdens and privileges of each town were declared and determined. And here is found the explanation and appropriate use of those terms.

If the committee had been authorized to determine contrary to existing laws, that a particular pauper should be supported by either town, they might have so determined respecting them all; and have decided that all of them should be supported by either town.

They do appear, if their decision be valid, to have imposed burdens upon the town of Holden, respecting other persons than Rhoda White, to which it was not liable by the existing laws. This is done by their decision, that it " shall assume all such as acquired an absolute settlement on the territory now within the incorporated boundaries of said Holden, except Rhoda White." According to this decision, that town would be liable hereafter to support persons who gained a settlement in Brewer while residing on the territory now composing the town of Holden, and who, at the time of the division were residing in the present town of Brewer, while by law such persons would have their legal settlement in Brewer.

If the town of Holden may be unable to recover any thing for the support of Rhoda White, it may be relieved from liability to future burdens more than equivalent.

The conclusion is, that the committee were not authorized to decide respecting the support or settlement of paupers.

*Plaintiffs nonsuit.*

TENNEY, APPLETON, RICE and HATHAWAY, J. J., concurred.